IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DARREN HENDERSON,** | ) | |
| No. R40280, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-cv-00664-NJR |
| | ) | |
| **WARDEN HARRINGTON,** | ) | |
| **TRUST FUND OFFICE SUPERVISOR,** | ) | |
| **LAW LIBRARY SUPERVISOR,** | ) | |
| **COUNSELOR NIPIN,** | ) | |
| **C/O SLAVENS,** | ) | |
| **C/O BROCK,** | ) | |
| **C/O FITZGERALD,** | ) | |
| **LORI OAKLEY,** | ) | |
| **LT. PAGE,** | ) | |
| **MAJOR OLEN,** | ) | |
| **LT. VEATH,** | ) | |
| **SHERRY BENTON, and** | ) | |
| **SGT. EOVALDI,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Darren Henderson, an inmate in Stateville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on an array of alleged constitutional violations that occurred while he was confined at Menard Correctional Center ("Menard"). The original 194-page complaint against 24 defendants was dismissed, and a 68-page amended complaint against 13 defendants has been filed (Doc. 6).

The amended complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally

frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 821 (7th Cir. 2009).

## Discussion

The Court's review will generally track the seven claims framed by Plaintiff (*see* Doc. 6, pp. 17-19). There is a general thread that runs through the amended complaint: retaliation for filing grievances and having pursued litigation against prison personnel. Although each claim will be addressed in the order presented in the amended complaint in order to appreciate why each claim is addressed narrowly, it will be stated now that an overarching conspiracy to retaliate against Plaintiff is not properly pleaded. Furthermore, insofar as the amended complaint suggests other possible claims, the Court has deferred to Plaintiff and only recognized the claims he identified.

### *Count 1*

According to the amended complaint, in 2012 this district court gave Plaintiff a December 24, 2012, deadline for filing an amended complaint in *Henderson v. Rednour*, Case

No. 12-cv-1113-GPM (S.D. Ill. 2012).[1]  On November 19, Plaintiff submitted a request that he be placed on the law library's "court deadline list," and asked for two books:  The Prison Self-Help Litigation Manual and the Federal Rules of Civil Procedure.  His request went unanswered, and he learned that the law library did not have him on the "court deadline list"—as though his request had never been received.  Plaintiff notes, however, that despite purportedly not being on the list, a law clerk appeared at his cell to pick up his pleading, suggesting the law library was aware of his deadline.  In any event, Plaintiff was forced to file his amended complaint without adequate access to the law library and legal materials.

Plaintiff characterizes the denial of access to the law library and legal materials as "deliberate indifference" and a violation of his rights under the First Amendment by the unnamed Law Library Supervisor.  On its face, Count 1 fails because there is insufficient personal involvement alleged on the part of the Law Library Supervisor (regardless of his or her name).  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).

Merely naming a defendant in the caption is insufficient to state a claim.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  The failure to put Plaintiff on the "court deadline list" and to get him the requested materials is not attributed to anyone, and the *respondeat superior* doctrine—liability merely because one is a supervisor—does not apply to Section 1983 actions. *See,* e.g., *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they

---

[1] A review of the record in Case No. 12-cv-1113-GPM reveals that on preliminary review three out of four original claims were dismissed with prejudice, and Plaintiff was given another chance to plead a colorable First Amendment retaliation claim (Doc. 5).

might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir. 2011).

This claim is also fatally flawed because, in order to state a First Amendment violation, Plaintiff would have to allege that he suffered an actual injury, such as showing that his pleading was dismissed due to a technical deficiency which, due to the denial of assistance from the law library personnel, he was unaware of or could not cure. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996) (discussing *Bounds v. Smith,* 430 U.S. 817, 821-25 (1977)). The amended complaint in Case No. 12-cv-1113-GPM was dismissed on the merits because Plaintiff failed to state a colorable retaliation claim—there was no allegation that Plaintiff was engaged in protected activity, so First Amendment protections are not triggered. *See* Case No. 12-1113-GPM, Doc. 11.

For these reasons, Count 1 will be dismissed with prejudice.

*Count 2*

Between December 19, 2012, and January 2, 2013, Plaintiff sent out seven letters to be mailed, accompanied by three money vouchers to cover the postage. Among the materials sent out for mailing was his amended complaint in Case No. 12-cv-1113-GPM, which was due on December 24, 2012. Prison regulations require money vouchers to be processed within ten working days, but Plaintiff did not learn until January 31, 2013, that his money vouchers were all rejected due to insufficient funds. As a result, the amended complaint supposedly was not filed on time, which Plaintiff asserts contributed to the dismissal of the amended complaint.

Noting that a trust fund statement indicates that he had $10 or more in his trust fund account during the relevant time period (*see* Doc. 6-1, p. 12), Plaintiff attributes the rejection of his vouchers, and resulting interference with his mail and the filing of his amended complaint, as

retaliation and an attempt to suppress his speech and litigation—all in violation of the First Amendment. He seeks to hold the unnamed Trust Fund Supervisor liable.

Insofar as Plaintiff takes issue with his money vouchers not being processed within the time frame prescribed by prison regulations, the violation of a prison rule or regulation is not, by itself, a constitutional violation. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003). The three trust fund vouchers at issue do not reflect who actually stamped them "insufficient funds" (Doc. 6-1, pp. 8-10). There is no actual allegation that the Trust Fund Supervisor was involved, so there is insufficient personal involvement alleged.

The assertion of interference with litigation also is undercut by the fact that the amended complaint was actually filed on December 21, 2014, well before the deadline. The amended complaint was dismissed because Plaintiff failed to state a colorable retaliation claim—there was no allegation that he was engaged in protected activity (*see* Case No. 12-1113-GPM, Doc. 11), so First Amendment protections were not triggered. *Lewis v. Casey*, 518 U.S. at 351-52 (an actual injury is required for this type of First Amendment claim).

Relative to the other letters Plaintiff was attempting to mail, he has failed to state a colorable claim. There is no suggestion that the letters were legal mail or otherwise privileged. Practices affecting non-legal mail are also covered by the First Amendment. *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989). It has long been established, however, that inmates do not even have a right to unlimited free *legal* postage. *Gaines v. Lane,* 790 F.2d 1299, 1308 (7th Cir.1986)(citing *Bach v. Coughlin*, 508 F.2d 303, 307 (7th Cir. 1974)). And short-term, isolated, non-content-based delays in receiving mail do not implicate the First Amendment. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). The delay in Plaintiff's situation—about a month—does not offend the Constitution.

With all that said, an act taken in retaliation for the exercise of free speech or the right to seek redress under the First Amendment violates the Constitution. *Surita v. Hyd*, 665 F.3d 860, 874 (7th Cir. 2011).

> "In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) his conduct was constitutionally protected; and (2) his conduct was a 'substantial factor' or 'motivating factor' in the defendant's challenged actions." *Abrams v. Walker,* 307 F.3d 650, 654 (7th Cir. 2002). The protected conduct " 'cannot be proven to motivate retaliation[ ] if there is no evidence that the defendants knew of the protected [activity].' " *Stagman v. Ryan,* 176 F.3d 986, 1000–01 (7th Cir.1999) (quoting *O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1369–70 (7th Cir. 1993)).

*Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003).

Relative to the materials being mailed in connection with Case No. 12-1113-GPM, as already explained, Plaintiff is clearly mistaken—his amended complaint *was* sent and timely filed. Therefore, no retaliation is evident and that aspect of Count 2 fails.

The rejection of Plaintiff's payment vouchers and delay in mailing other non-privileged mail *could* have been due to his litigation activity. As pleaded, however, the amended complaint does not satisfy the *Twombly* pleading standard. Again, it appears that the Trust Fund Supervisor is only named as a defendant to this claim under a theory of supervisor liability, which is insufficient for liability.

The retaliation aspects of Count 2 will be dismissed without prejudice; the free speech and interference with litigation aspects will be dismissed with prejudice.

### *Counts 3 and 4*

In February 2013, Plaintiff conveyed to Counselor Nipin grievances regarding the library and mail issues discussed relative to Counts 1 and 2. Plaintiff was subsequently moved from cell to cell, so he checked with Nipin to learn the status of his grievances and to alert Nipin to his cell change. Apparently, not all grievances were processed, so in April Plaintiff sent four more

grievances regarding the same issues. One month later, Counselor Phoenix, not Counselor Nipin, told Plaintiff that only one grievance was pending.

Eventually, Plaintiff received notice that one of his February 2013 grievances had been rejected. More specifically, what Plaintiff labeled as an emergency grievance, Warden Harrington had concluded was not an emergency. Plaintiff also describes (in a somewhat confusing and disjointed fashion) that pages were missing from the documents he submitted, and his prison mail was sent to the wrong cell.

Count 3 is brought against Counselor Nipin, and Count 4 is against Warden Harrington. These two Counts are considered together because Plaintiff perceives the handling (or mishandling) of his grievances as a conspiracy among the warden, counselors, and mailroom staff to interfere with Plaintiff's efforts to redress his grievances, in retaliation for Plaintiff's prior litigation, and in violation of the First Amendment.

Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). The assertion in the amended complaint that there was a conspiracy fails to satisfy the *Twombly* pleading standard. "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)). Plaintiff

describes confusion and possible negligence, but nothing that reasonably indicates that there was a meeting of the minds. This aspect of Counts 3 and 4 will be dismissed without prejudice.

Regarding retaliation and interference with Plaintiff's grievances, at this early juncture the Court cannot fully assess the viability of these claims against Warden Harrington and Counselor Nipin. Those aspects of Counts 3 and 4 shall proceed.

*Counts 5-7*

Counts 5-7 are considered together because those claims stem from the following events drawn from the very muddled amended complaint and attached documentation.

Plaintiff, who suffers from asthma and allergies, was moved back and forth between an "open" cell with bars and a "closed" cell with a solid steel door. The closed cell aggravated his medical conditions. Plaintiff opines that the constant cell switching is used to retaliate against those who file grievances and to disrupt the grievance process (*see* Count 2). Some of Plaintiff's grievances regarding being in a closed cell were denied by Lori Oakley; other grievances that were given to Counselor Nipin went unanswered.

After Plaintiff began filing grievances, C/O Slavens, Sgt.. Eovaldi, along with Lt. Page, Major Olson, and R. Cowan (who is not a named defendant), strip searched Plaintiff and his cellmate and searched their cell. No disciplinary report was issued at that time. Plaintiff asserts that he was being harassed. Approximately a week later, Plaintiff was called before the Adjustment Committee for a hearing on charges regarding the possession of contraband. Lt. Veath, chairperson of the Committee, did not give Plaintiff notice of the charges until the hearing started; consequently, Plaintiff was unable to properly prepare and put on a defense. C/O Brock falsely stated that Plaintiff had refused to sign for receipt of the disciplinary reports charging him with disobeying an order and possessing dangerous contraband. It was only after the hearing that

the disciplinary reports and a "shakedown slip" were slid under Plaintiff's cell door. The falsity of Lt. Veath's hearing report is purportedly apparent because C/O Brock indicated Plaintiff was served with the charges at 4:42 p.m., but Eovaldi and Slavens did not complete their reports until 5:00 p.m. and 5:05 p.m., respectively.

Plaintiff filed a grievance regarding his Adjustment Committee hearing. From his perspective, Grievance Officer Lori Oakley denied the grievance based on her own version of events, mirroring Lt. Veath's findings.

The documents Plaintiff asserts prove his disciplinary conviction was concocted were sent for copying. Plaintiff was transferred from Menard to Pontiac Correctional Center before his documents, and copies were returned to him. Officials at Pontiac contacted Menard about the documents, to no avail—they were never located. Consequently, Plaintiff was unable to meaningfully appeal the denial of his grievance (and disciplinary conviction). Sherry Benton denied the appeal and affirmed the disciplinary conviction for possession of dangerous contraband, despite insufficient evidence, and despite finding irregularities in the process, including that the investigation occurred *after* the disciplinary hearing.

A second disciplinary incident occurred a few months later. C/O Fitzgerald charged Plaintiff with disobeying an order after Plaintiff allegedly failed to stop flushing papers down a toilet. Plaintiff contends that C/O Fitzgerald issued the disciplinary report in retaliation for Plaintiff having filed grievances. Lt. Veath and the Adjustment Committee found Plaintiff guilty of the offense, which Plaintiff asserts was just another act of retaliation.

Plaintiff appears to allege that all of the prison officials mentioned above conspired to deny him due process, all in retaliation for seeking redress of his grievances.

Count 5 alleges that Lt. Veath did not give Plaintiff notice of the charges against him 24 hours in advance of the hearing, and convicted him without proper investigation and sufficient evidence, all in violation of the Fourteenth Amendment. This due process and retaliation claims shall be permitted to proceed.

Count 6 alleges that Sherry Benton denied Plaintiff a meaningful way to challenge his disciplinary conviction(s), in violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment. Merely "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007; *see also McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013). Therefore, as pleaded, the claim against Sherry Benton will be dismissed without prejudice. The retaliation claim, however, shall proceed.

Count 7 presents the allegation that all those involved in the cell search, who wrote disciplinary reports, and who were involved in the disciplinary and grievance processes, acted in conspiracy to deny Plaintiff due process and to retaliate against him for seeking redress of his grievances. "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow,* 636 F.3d at 304–05. Ultimately, there must be "sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. at 305. Again, a mere assertion is insufficient to allege a conspiracy. There is nothing from which to reasonably infer the requisite meeting of the minds. Count 7 will be dismissed without prejudice. Consequently, Defendants Law Library Supervisor, Trust Fund Supervisor, C/O Slavens, C/O Brock, C/O Fitzgerald, Lori Oakley, Lt.

Page, Major Olsen and Sgt. Eovaldi will all be dismissed without prejudice, as no other claims remain against them.

### Disposition

The Clerk of Court is **DIRECTED** to ensure that the record mirrors the style of the case set forth in this Order.

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** against Defendant **LAW LIBRARY SUPERVISOR** is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that claims against **TRUST FUND SUPERVISOR** in **COUNT 2** regarding free speech and interference with litigation are **DISMISSED with prejudice**, and the First Amendment retaliation claim is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the conspiracy claims against **COUNSELOR NIPIN** in **COUNT 3** are **DISMISSED without prejudice**, but the First Amendment retaliation claim shall proceed.

**IT IS FURTHER ORDERED** that the conspiracy claims against **WARDEN HARRINGTON** in **COUNT 4** are **DISMISSED without prejudice**, but the First Amendment retaliation claim shall proceed.

**IT IS FURTHER ORDERED** that the First Amendment retaliation claim and the Fourteenth Amendment due process claim against Defendant **LT. VEATH** in **COUNT 5** shall proceed.

**IT IS FURTHER ORDERED** that the Fourteenth Amendment due process claim against Defendant **SHERRY BENTON** in **COUNT 6** is **DISMISSED without prejudice**, but the First Amendment retaliation claim shall proceed.

**IT IS FURTHER ORDERED** that **COUNT 7**, the conspiracy claim against **ALL DEFENDANTS**, is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Defendants **LAW LIBRARY SUPERVISOR, TRUST FUND SUPERVISOR, C/O SLAVENS, C/O BROCK, C/O FITZGERALD, LORI OAKLEY, LT. PAGE, MAJOR OLSEN and SGT. EOVALDI** are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants **WARDEN HARRINGTON, COUNSELOR NIPIN and LT. VEATH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.

Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants **WARDEN HARRINGTON, COUNSELOR NIPIN and LT. VEATH** are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 30, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**