IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARREN HENDERSON, | ) |
|     Plaintiff, | ) |
| vs. | ) Case No. 3:14-CV-664-NJR-DGW |
| RICHARD HARRINGTON, MONICA NIPPE, TIMOTHY VEATH, and SHERRY BENTON, | ) |
|     Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Currently pending before the Court is the Motion for Summary Judgment filed by Defendants Richard Harrington, Monica Nippe, Timothy Veath, and Sherry Benton on September 8, 2016 (Doc. 43).

### BACKGROUND

Plaintiff, Darren Henderson, is an inmate who was formerly housed at Menard Correctional Center. Henderson alleges that his constitutional rights were violated by a number of Menard employees including Warden Richard Harrington, counselor Monica Nippe, Adjustment Committee Chairperson Timothy Veath, and Chairperson of the Administrative Review Board, Sherry Benton. Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Henderson was permitted to proceed on retaliation claims against all Defendants, as well as a due process claim against Veath (Counts 3-6) (Doc. 8).

In short, Henderson claims that Harrington and Nippe retaliated against him for filing lawsuits by mishandling grievances in early 2013 (Doc. 8). He further claims that Veath and Benton retaliated against him by failing to properly conduct a disciplinary hearing and subsequent appeal related to two disciplinary tickets received at some point in 2012 or 2013 for possessing contraband and disobeying an order (Doc. 8).

Defendants now seek summary judgment on Henderson's claims (Doc. 43). Along with their motion and memorandum, Defendants served a notice in accordance with Federal Rule of Civil Procedure 56 informing Henderson of the requirements of the Rule and the consequences of failing to respond to their motion for summary judgment (Doc. 45). Despite the notice, Henderson did not file a response to the motion.

The undisputed evidence reveals that Henderson was issued a disciplinary report on August 20, 2012, for possessing a shank and engaging in gang related activity (Doc. 44, ¶6). The Adjustment Committee conducted a hearing on August 23, 2012; Henderson pleaded guilty and sanctions were imposed (Doc. 44, ¶¶7-8). Following the hearing, Henderson submitted grievances related to the disciplinary report, which were denied at the institutional level by a grievance officer and Warden Harrington (Doc. 44, ¶¶9-10). Henderson appealed to the Administrative Review Board and received a response from Defendant Benton on July 8, 2013 (Doc. ¶12, Doc. 44-2, Doc. 44-3). Defendant Benton stated the grievance was denied as it pertained to the charge of possessing a shank, but granted as it pertained to the charge of gang activity (Doc. 44, ¶12, Doc. 44-2, Doc. 44-3). Specifically, Defendant Benton determined that Henderson

should be found not guilty on the charge of gang activity due to non-compliance with the procedural due process safeguards outlined in DR 504.30 and DR 504.80 (Doc. 44-3).

According to Defendants, the undisputed evidence also shows that prior to Defendant Benton's decision, Henderson received two additional disciplinary tickets on March 29, 2013, for: (1) possessing drugs, unauthorized property, and health and safety violations (numbered 201300468/1); and (2) possessing drugs, possessing dangerous written material, and possessing contraband (numbered 201300463/1) (Doc. 44, ¶¶14, 18). The Adjustment Committee conducted a hearing on April 4, 2013; Henderson was found guilty of the first set of offenses and pleaded guilty to the second set of offenses. (Doc. 44, ¶¶17, 20). He was sanctioned with six months of demotion to C grade, segregation, commissary restrictions, and contact visit restrictions (Doc. 44, ¶¶17, 21). Defendant Veath served on the Adjustment Committee that adjudicated these two disciplinary tickets (Doc. 44, ¶22).

To support these facts, Defendants rely on the affidavit of Angela Grott, the litigation coordinator at Menard (Doc. 44-4, pp. 1-2). Ms. Grott, in turn, relies on the actual disciplinary reports themselves (Doc. 44-5, pp. 2, 6). Those reports, however, are facially and internally inconsistent and do not explicitly support Ms. Grott's statements. The first disciplinary ticket, signed by Joel Slavens, was issued after Henderson's cell was searched (*see* Doc. 44-5, p. 2). The cell search occurred at 3:05 p.m. on March 29, 2013 (Doc. 44-5, p. 2). The ticket indicates that Slavens signed it on March 29th at 5:05 p.m. (Doc. 44-5, p. 2). It also indicates, however, that it was served on Henderson on March 29th at *4:46 p.m.*, prior to when it was signed (*Id.*). The second disciplinary ticket, signed

by Sergeant Eovaldi, was issued after Henderson was searched (*see* Doc. 44-5, p. 6). The strip search occurred at 3:20 p.m. on March 29, 2013 (Doc. 44-5, p. 6). The ticket indicates that it was served at 4:42 p.m. but does not contain the date on which it was served (Doc. 44-5, p. 6). It can be reasonably presumed that the report was served on March 29th; however, it also appears to have been served before it was signed by Sergeant Eovaldi. The Court assumes that the officers would have signed the disciplinary reports prior to serving them upon an inmate.

Henderson points out this inconsistency in his deposition—that he could not have been served when the disciplinary reports indicate because the times don't make sense (Doc. 44-1, p. 31). He further testified that he never received a copy of the disciplinary reports and that "[t]hey only said something about a ticket when I say something to them about it" (*Id.*). Finally, he testified that Defendant Veath failed to consider his written statement (*Id.*).

Defendants do not address the time discrepancy in their evidence, Henderson's denial that he received the disciplinary reports, or the failure to consider Henderson's written statements. As explained below, however, these genuine disputes over facts are not dispositive because the facts are not material.

## DISCUSSION

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A "material fact" is one

> identified by the substantive law as affecting the outcome of the suit. A "genuine issue" exists with respect to any such material fact . . . when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party.

*Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citations omitted).

In the Southern District of Illinois, a party's failure to respond to a summary judgment motion "may, in the Court's discretion, be considered an admission of the merits of the motion." SDIL–LR 7.1(c). *See also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.") The Court exercises its discretion under Local Rule 7.1(c) and considers Henderson's failure to respond to Defendants' motion for summary judgment an admission on the merits of the motion.

**A. Retaliation Claims**

It is well-settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). At the summary judgment stage, a prisoner has the initial burden to make out a *prima facie* case of retaliation by showing that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citing *Thayer v. Chiczewski,* 705 F.3d 237, 251 (7th Cir.

2012)).

Henderson indisputably has a First Amendment right to file grievances and lawsuits. *DeWalt*, 224 F.3d at 618; *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Thus, Henderson must set forth a chronology of events and show that his grievances and lawsuits were a motivating factor for an adverse action. *DeWalt*, 224 F.3d at 618. But because Henderson did not respond to the motion for summary judgment, he has failed to make this showing. And, as best the Court can tell, the record contains no evidence that any of Henderson's lawsuits or grievances were a motivating factor behind any of Defendants' conduct. Therefore, they are each entitled to judgment, as a matter of law, on Henderson's First Amendment claims. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015) (holding that the district court has discretion to enforce Local Rules and that it is not required to "scour the record looking for factual disputes.").

## B.  Due Process Claims

Inmates are entitled to certain procedural protections when constitutionally protected interests are at stake. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995). These include at least 24 hours advance written notice of the charges prior to a hearing, the opportunity to call witnesses and present certain evidence, and the right to a written statement providing the basis of decision and the evidence relied upon. *Wolff v. McDonnell*, 418 U.S. 539 (1974). A disciplinary decision must also be supported by "some evidence in the record" when good conduct credit is revoked. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). Henderson first alleges that he was not given adequate written notice. And there is evidence that Henderson was not in fact served

with the disciplinary tickets at least 24 hours prior to his hearing. There is also evidence that Defendant Veath ignored Henderson's written statements.

As indicated above, Henderson was sanctioned on both tickets with six months C grade, six months segregation, six months commissary restriction, and six months contact visit restrictions. He was *not* sanctioned with loss of good conduct credit, which is something that would affect a liberty interest. None of the punishments that he actually received necessarily implicates a liberty interest unless they "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). With segregation, the Court would consider the length of segregation and the conditions endured. *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013). There is no evidence that the segregation conditions were particularly harsh, and six months in segregation, standing alone, is insufficient to implicate a liberty interest. *Marion v. Columbia Corr. Inst.*, 559 f.3d 693, 698 (7th Cir. 2009). There is also nothing that suggests the demotion to C grade and the contact and commissary restrictions imposed an atypical and significant hardship on Henderson. *See generally Thomas v. Ramos*, 130 F.3d 754 (7th Cir. 1997); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). As such, whether or not Henderson was served with the disciplinary report and whether or not his evidence was considered poses no due process concerns.

C. **Qualified Immunity**

Defendants final argument is that they are entitled to qualified immunity. "Generally, qualified immunity protects government agents from liability when their actions do not violate 'clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011) (citing *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010)). In determining whether a defendant is entitled to qualified immunity, the Court must ask two questions: (1) whether the facts, taken in the light most favorable to Plaintiff, show that Defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Hernandez*, 634 F.3d at 914 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 202 (2001)).

The Court need not consider the issue of qualified immunity because it has already concluded that the evidence, when viewed in a light most favorable to Henderson, does not establish a genuine issue of fact that Henderson's constitutional rights were violated.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants (Doc. 43) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Henderson and to terminate this action accordingly.

## NOTICE

If Henderson wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Henderson chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Henderson files a

motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Henderson wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v.*

*CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Henderson showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Henderson chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Henderson cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement from his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Henderson plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:   January 23, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**